**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |  |
|---|---|---|
| | **:** | |
| AMY GLATER MONDSCHEIN, | : | |
| | : | |
| plaintiff, | : | |
| | : | |
| v. | : | CASE NO. 3:19-cv-01019(RAR) |
| | : | |
| ANDREW SAUL, | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| defendant. | : | |

### RULING ON PENDING MOTIONS

Amy Glater Mondschein ("plaintiff") appeals the final decision of the Commissioner of Social Security ("the Commissioner") pursuant to 42 U.S.C. § 405(g).  The Commissioner denied plaintiff's application for Social Security Disability Benefits in a decision dated July 30, 2018.  Plaintiff timely appealed to this Court.  Currently pending are plaintiff's motion for an order reversing or remanding her case for a hearing (Dkt. #14-2) and defendant's motion to affirm the decision of the Commissioner.  (Dkt. #18-1.)

For the reasons that follow, the plaintiff's motion to reverse, or in the alternative, remand is GRANTED and the Commissioner's motion to affirm is DENIED.

## STANDARD

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. Id.; Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching her conclusion, and whether the decision is supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).

Therefore, absent legal error, this court may not set aside the decision of the Commissioner if it is supported by substantial evidence. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

2

The Second Circuit Court of Appeals has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence must be "more than a scintilla or touch of proof here and there in the record." Williams, 859 F.2d at 258.

The Social Security Act ("SSA") provides that benefits are payable to an individual who has a disability.  42 U.S.C. § 423(a)(1).  "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . ."  42 U.S.C. § 423(d)(1).  In order to determine whether a claimant is disabled within the meaning of the SSA, the ALJ must follow a five-step evaluation process as promulgated by the Commissioner.[1]

---

[1] The five steps are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him or her disabled, without considering vocational factors such as age, education, and work experience; (4) if the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the

In order to be considered disabled, an individual's
impairment must be "of such severity that he is not only unable
to do his previous work but cannot . . . engage in any other
kind of substantial gainful work which exists in the national
economy."  42 U.S.C. § 423(d)(2)(A).  "[W]ork which exists in
the national economy means work which exists in significant
numbers either in the region where such individual lives or in
several regions of the country."  Id.[2]

## PROCEDURAL HISTORY

Plaintiff initially filed for disability insurance benefits
under Title II on September 29, 2016.  (R. 194.)[3]  Plaintiff
alleged a disability onset date of March 18, 2016.  (R. 84.)  At
the time of application, plaintiff alleged that she suffered
from a traumatic brain injury, PTSD, depression, right calcaneus
injury, left rib injury, right ankle injury, anxiety, and
cognitive impairment.  (R. 84-85.)  The initial application was

---

Commissioner then determines whether there is other work which
the claimant could perform.  The Commissioner bears the burden
of proof on this last step, while the claimant has the burden on
the first four steps.  20 C.F.R. § 416.920(a)(4)(i)-(v).

[2] The determination of whether such work exists in the national
economy is made without regard to: 1) "whether such work exists
in the immediate area in which [the claimant] lives;" 2)
"whether a specific job vacancy exists for [the claimant];" or
3) "whether [the claimant] would be hired if he applied for
work."  Id.

[3] The Court cites pages within the administrative record as "R.
___."

denied on November 28, 2016, and again upon reconsideration on April 4, 2017. (R. 115-118, 125-127). Plaintiff then filed for an administrative hearing which was held by ALJ Louis Bonsangue (hereinafter the "ALJ") on March 23, 2018. (R. 34-83.) The ALJ issued an unfavorable decision on July 30, 2018. (R. 9-27.) Plaintiff filed a request for review with the Appeals Council on August 15, 2018. (R. 191-193.) The Appeals Council denied plaintiff's request for review on April 29, 2019. (R. 13.) Plaintiff then filed this action seeking judicial review. (Dkt. #14-2.)

## DISCUSSION

Plaintiff argues that the ALJ failed to develop the record, failed to apply the treating physician rule, and that the ALJ's findings at step two and step five are not supported by substantial evidence. (Pl. Br. 1, 9, 14, 22.) Based on the following, the Court finds that the ALJ failed to develop the record and violated the treating physician rule. The Court therefore remands the ALJ's decision without considering plaintiff's remaining arguments.

### I. The ALJ Failed to Develop the Record

Plaintiff argues that the ALJ failed to develop the record by not obtaining medical source statements from Dr. Berson, Dr. Penta, and Dr. Benthien, and by failing to obtain an updated

opinion from Dr. Trettel.  (Pl. Br. 1.)  The Court agrees
regarding opinions from Dr. Penta and Dr. Trettel.

An ALJ has an affirmative duty to develop the record "in
light of 'the essentially non-adversarial nature of a benefits
proceeding.'"  Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996)
(quoting Echevarria v. Secretary of HHS, 685 F.2d 751, 755 (2d
Cir. 1982)); see also Swiantek v. Commissioner, 588 F. App'x 82,
83-84 (2d Cir. 2015).  "When an unsuccessful claimant files a
civil action on the ground of inadequate development of the
record, the issue is whether the missing evidence is
significant."  Santiago v. Astrue, No. 3:10-cv-937(CFD), 2011 WL
4460206, at *2 (D. Conn. Sept. 27, 2011) (citing Pratts v.
Chater, 94 F.3d 34, 37-38 (2d Cir. 1996)).

A court must remand "where 'the medical records obtained by
the ALJ do not shed any light on the [claimant's RFC], and
[where] the consulting doctors did not personally evaluate' the
claimant."  Martinez v. Berryhill, No. 3:17-cv-843 (SRU), 2019
WL 1199393, at *11 (D. Conn. Mar. 14, 2019) (quoting Guillen v.
Berryhill, 697 F. App'x 107, 108-09 (2d Cir. 2017) (summary
order)).  "The record is insufficient when '[t]he medical
records discuss [the claimant's] illnesses and suggest treatment
for them, but offer no insight into how [the] impairments affect
or do not affect [the claimant's] ability to work, or [his]
ability to undertake the activities of daily life.'"  Martinez,

2019 WL 1199393, at *11 (alterations in original) (quoting

Guillen, 697 F. App'x at 109).

A. *The ALJ Did Not Err by Failing to Request a Treating Source*
   *Statement from Plaintiff's Treating Orthopedics, Doctors*
   *Lawrence Berson and Ross Benthien.*

Plaintiff argues that there was an obvious gap in the

record because there was no medical source statement by either

of plaintiff's treating orthopedic doctors, Dr. Lawrence Berson

and Dr. Ross Benthien, and that the ALJ failed to develop the

record by not requesting such opinions.  (Pl. Br. 1-2.)  The

Court disagrees.

On August 25, 2017, Dr. Benthien provided a letter

detailing plaintiff's medical history, the results of an

examination that had been completed on that date, and the

results of radiographs and CT scans.  (R. 1916-18.)  At the end

of the letter, Dr. Benthien opined that plaintiff had reached a

maximum level of improvement and "sustained a 22% permanent

partial impairment to the right lower extremity or 31% permanent

partial impairment to the right foot and ankle."  (R. 1917.)

Plaintiff argues that this letter is insufficient to serve as a

medical source statement because it does not provide a function-

by-function basis of plaintiff's limitations.  (Pl. Br. 2, n.1.)

The Court disagrees.

"Medical opinions are statements from acceptable medical

sources that reflect judgments about the nature and severity of

[a plaintiff's] impairment(s), including [his or her] symptoms, diagnosis and prognosis, what [he or she] can still do despite impairment(s), and [their] physical or mental restrictions," 20 C.F.R. § 404.1527(a)(1). The "failure to provide a 'function-by-function assessment' is not a basis for discounting a medical opinion.'" Doyle v. Berryhill, No. 5:16-cv-24, 2017 WL 2364312, at *6 (D. Vt. May 31, 2017).

"[A] medical opinion is not limited to a functional assessment or to a medical source statement, but includes a physician's opinion as to the 'nature and severity' of the claimant's symptoms, including the physician's opinion as to the claimant's diagnosis and prognosis. Such opinions should be considered in accordance with 20 C.F.R. §§ 404.1527 and 416.927, including the treating physician rule and the criteria for weighing medical opinion evidence listed therein." Urena v. Colvin, No. 13 CIV. 06270 LGS DC, 2015 WL 585583, at *16 (S.D.N.Y. Feb. 11, 2015); see also Melanie M. v. Berryhill, No. 5:18-CV-149, 2019 WL 3852699, at *10 (D. Vt. Aug. 16, 2019) (internal citations and quotation marks omitted)(holding that a treating physician's opinion is treated the same regardless of whether or not it provides a function-by-function analysis of the plaintiff's limitations).

On August 25, 2017, Dr. Benthien conducted an examination of plaintiff to serve as part of the basis of his opinion. (R.

1917.)  Dr. Benthien noted plaintiff's areas of pain and her
degrees of movement.  (R. 1917.)  Dr. Benthien further noted
that radiographs and a CT scan confirmed a well-healed, previous
calcaneus fracture but degenerative changes throughout the
subtalar joint causing restrictions in plaintiff's range of
motion.  (R. 1917.)  Finally, Dr. Benthien opined that plaintiff
would need further surgical intervention in the future although
she had reached a maximum level of improvement and "sustained a
22% permanent partial impairment to the right lower extremity or
31% permanent partial impairment to the right foot and ankle."
(R. 1917.)  The ALJ stated that Dr. Benthien's opinion was
consistent with the record but rejected the opinion for failure
to provide a function-by-function assessment of plaintiff's
abilities.

     As indicated by the case law above, Dr. Benthien's failure
to provide a function-by-function assessment of plaintiff's
limitations does not render it an insufficient medical source
statement.  The opinion examines the "'nature and severity' of
the [plaintiff's] symptoms, including the physician's opinion as
to the [plaintiff's] diagnosis and prognosis" and therefore is
sufficient to be treated as a medical source statement entitled
to controlling weight.  Urena v. Colvin, No. 13 CIV. 06270 LGS
DC, 2015 WL 585583, at *16 (S.D.N.Y. Feb. 11, 2015).

As the ALJ did obtain a treating source statement from plaintiff's treating orthopedist, the Court rejects plaintiff's argument that there was an obvious gap in the record.  Because plaintiff does not assert that the ALJ needed a function-by-function analysis from both orthopedists and the Court has determined that Dr. Benthien's opinion was sufficient, the Court finds that there was not an obvious gap in the record.  The ALJ therefore did not fail to develop the record in this regard.

B. *The ALJ Err by Failing to Request a Medical Source Statement from Dr. Christopher Penta or an updated Treating Source Statement from Dr. Joseph Trettel.*

Plaintiff argues that there was an obvious gap in the record because the ALJ failed to request a medical source statement from Dr. Christopher Penta and an updated medical source statement from Dr. Joseph Trettel.  The Court agrees.

An ALJ does not have a duty to recontact a treating physician for an updated opinion when the record is sufficient for the ALJ to render a determination as to plaintiff's residual functional capacity ("RFC") determination.  <u>Sweeting v. Colvin</u>, No. 12-CV-917 DNH/CFH, 2013 WL 5652501, at *5 (N.D.N.Y. Oct. 15, 2013).  In <u>Sweeting</u>, the court determined that the ALJ did not err by failing to contact plaintiff's treating physician for an updated opinion although the opinion was issued almost two and a half years before plaintiff's ALJ hearing and over a year after plaintiff's alleged onset date.  <u>See</u> <u>id.</u> at *1, *5.  The court

10

found that plaintiff failed to present evidence that his functional limitations changed since the original opinion, and the ALJ's opinion was supported by (a) sufficient medical records, (b) the treating physician's opinion, and (c) the consulting examiner's opinion.  Id. at *5.

Dr. Trettel treated plaintiff from August 30, 2016 to June 29, 2017.  (R. 956, 1566.)  Dr. Trettel provided a medical source statement on October 24, 2016, just two months after beginning to treat plaintiff.  (R. 1297–1301.)  Dr. Trettel opined that plaintiff had no ability or limited ability in almost all functional ability areas.  (R. 1299–1300.)  According to Dr. Trettel's opinion, the only areas in which plaintiff would have average abilities were in her ability to take care of personal hygiene; caring for physical needs, such as eating and dressing; and carrying out single step instructions.  (R. 1299–1300.)  Dr. Trettel opined that plaintiff would only have a reduced ability to use good judgment regarding safety and dangerous circumstances; carry out multi-step instructions; and perform basic activities at a reasonable pace.  (R. 1299–1300.)  Dr. Trettel also noted that plaintiff would have no ability to ask questions or request assistance.  (R. 1300.)  The ALJ determined that Dr. Trettel's opinion was inconsistent with the record and based on a very limited treatment history.  (R. 23.)

The ALJ therefore assigned little weight to Dr. Trettel's opinion. (R. 23.)

As in Sweeting, plaintiff does not present any evidence that her functional abilities worsened since Dr. Trettel's drafting of the opinion. While an opinion from June 2017 would have been based on a longer treatment history and perhaps would have persuaded the ALJ to afford more weight to the opinion, the ALJ discounted the weight of the opinion because of its extreme and unsubstantiated limitations. (R. 23.)

However, unlike Sweeting, the ALJ's mental RFC determination was not supported by substantial evidence. The ALJ determined that plaintiff was limited only to performing simple, routine, and repetitive tasks. Plaintiff could not be expected to work directly with the public and could tolerate basic changes in work routines on a day-to-day basis. (R. 19.)

Absent legal error, this Court may not set aside the decision of the Commissioner if it is supported by substantial evidence. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). If the Commissioner's decision is supported by substantial evidence, the decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

The Second Circuit has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" <u>Williams on Behalf of</u>
<u>Williams v. Bowen</u>, 859 F.2d 255, 258 (2d Cir. 1988) (quoting
<u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)). Substantial
evidence must be "more than a scintilla or touch of proof here
and there in the record." <u>Williams</u>, 859 F.2d at 258.

"[W]hether there is substantial evidence supporting the
appellant's view is not the question here; rather, we must
decide whether substantial evidence supports the ALJ's
decision." <u>Bonet v. Colvin</u>, 523 Fed. Appx. 58, 59 (2d Cir.
2013)(summary order). Analogously, "[g]enuine conflicts in the
medical evidence are for the Commissioner to resolve." <u>Veino v.</u>
<u>Barnhart</u>, 312 F.3d 578, 588 (2d Cir. 2002).

While the standard for substantial evidence is low, the ALJ
failed to present evidence in the record supporting his
determination. First, the ALJ noted that plaintiff was
improving with treatment and medication. The ALJ cited to five
areas in the record as support for this determination. (R. 22.)
However, only three of the five referenced sections of the
medical records indicate any sort of improvement in plaintiff's
symptoms. (R. 1362, 1412, 1448, 1464, 1477.) Contrary to the
ALJ's assertion, plaintiff's medical records in fact demonstrate
that plaintiff was not improving with medication or treatment
and both Doctors Penta and Trettel were increasing plaintiff's
treatments and medications in an attempt to manage plaintiff's

symptoms.  (R. 1283, 1286, 1287–88, 1289, 1290, 1292, 1487, 1488, 1491.)  Despite noting that plaintiff had improved somewhat in some areas, Dr. Trettel noted that plaintiff was still disabled by her symptoms and unable to work.[4]  (R. 1479, 1483, 1485, 1488, 1490, 1491.)  Dr. Penta's most recent treatment notes state that cognitive difficulties still impact her life and that plaintiff's recovery would be slow and long despite noting some improvements in earlier treatment notes. (R. 1292–93.)

The ALJ noted that plaintiff demonstrated normal concentration, memory abilities, and attention during therapy, however, the treatment notes that the ALJ referenced actually demonstrate that plaintiff was unable to complete assigned tasks, took multiple breaks, and that the examiner was unable to complete the mini mental status exam and the short orientation memory concentration test.  (R. 28, 609, 612, 624.)  Further, the notes referenced by the ALJ demonstrate that plaintiff had problems with multi-step instructions, recalling information, and cognitive strategy.  (R. 587, 597, 613.)

---

[4] The Court recognizes that a determination as to whether a plaintiff is disabled is reserved to the ALJ.  Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999).  The Court references these statements to provide context to the treating physician's notes which demonstrate that plaintiff's improvements were not as significant as the ALJ asserts.

Much of the evidence the ALJ cites in support of the decision to discount plaintiff's mental impairments does not come from plaintiff's treating mental health physicians, Dr. Penta and Dr. Trettel, but from plaintiff's neurologist and other physicians.  This was in error insofar as plaintiff's mental health physicians are entitled to greater deference when examining plaintiff's mental disabilities.  Fontanez v. Colvin, No. 16-CV-01300 (PKC), 2017 WL 4334127, at *21 (E.D.N.Y. Sept. 28, 2017).

As the record does not support the ALJ's determination, the ALJ was required to obtain additional evidence of plaintiff's mental limitations before denying benefits.  The ALJ could have done this by contacting Dr. Trettel for an updated opinion or by requesting an opinion from plaintiff's treating psychiatrist, Dr. Penta.

An opinion from Dr. Penta would have been highly probative because Dr. Penta treated plaintiff for her stress and anxiety. Where plaintiff suffers from stress, "the Commissioner must . . . make specific findings about the nature of [plaintiff's] stress, the circumstances that trigger it, and how those factors affect [her] ability to work."  Fontanez v. Colvin, No. 16-CV-01300 (PKC), 2017 WL 4334127, at *22 (E.D.N.Y. Sept. 28, 2017). Findings of stress levels must be based on the opinion of a mental health professional.  Id.

Despite Dr. Penta's treatment notes demonstrating a general decline in plaintiff's cognitive abilities and that she was in the middle of aggressive treatment at the time the record was developed at the agency level, the ALJ did not request a medical source statement from Dr. Penta.  Further, as Dr. Penta's medical records only spanned three months of the relevant period, such an opinion would have been highly probative into plaintiff's mental abilities by further developing the record beyond the very small period of time developed at the agency level.  See Clarkson v. Berryhill, No. 3:18-CV-00477(RAR), 2020 WL 1026802, at *3 (D. Conn. Mar. 3, 2020) (emphasizing the importance of the ALJ's duty to develop the record where the vast majority of the record is missing medical records from plaintiff's treating mental health physician).

The Court must therefore remand so that the ALJ may obtain a medical source statements Dr. Penta or an updated medical source statement from Dr. Trettel.

## II.  The ALJ Violated the Treating Physician Rule

Plaintiff argues that the ALJ violated the treating physician rule by failing to explicitly consider the factors identified in 20 C.F.R. § 404.1527. (Pl. Br. 9-13.)  The Court disagrees with plaintiff's argument but concludes that the ALJ violated the treating physician rule.

The medical opinions of treating physicians are generally given more weight than other evidence.  The treating physician rule stipulates that "the opinion of a [plaintiff's] treating physician as to the nature and severity of the impairment is given 'controlling weight' as long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'"  Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)); see also Mariani v. Colvin, 567 F. App'x 8, 10 (2d Cir. 2014) ("A treating physician's opinion need not be given controlling weight where it is not well-supported or is not consistent with the opinions of other medical experts" where those other opinions amount to "substantial evidence to undermine the opinion of the treating physician").

"The regulations further provide that even if controlling weight is not given to the opinions of the treating physician, the ALJ may still assign some weight to those views, and must specifically explain the weight that is actually given to the opinion." Schrack v. Astrue, 608 F. Supp. 2d 297, 301 (D. Conn. 2009) (citing Schupp v. Barnhart, No. Civ. 3:02-CV-103(WWE), 2004 WL 1660579, at *9 (D. Conn. Mar. 12, 2004)).  It is "within the province of the ALJ to credit portions of a treating physician's report while declining to accept other portions of

the same report, where the record contain[s] conflicting opinions on the same medical condition." Pavia v. Colvin, No. 6:14-cv-06379 (MAT), 2015 WL 4644537, at *4 (W.D.N.Y. Aug. 4, 2015) (citing Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002)).

In determining the amount of weight to give to a medical opinion, the ALJ considers the examining relationship, the treatment relationship, the length of treatment, the nature and extent of treatment, evidence in support of the medical opinion, consistency with the record, specialty in the medical field, and any other relevant factors.  20 C.F.R. § 404.1527.  It is generally appropriate to "give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."  20 C.F.R. § 416.927(c)(5).

After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'"  Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (citing (citing Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008))(alteration in original).  The ALJ may not simply substitute his own judgment for that of the treating physician, and failure to provide good reasons for the weight given to a treating physician's opinion is grounds for remand.  Id.

"SSA regulations provide a very specific process for evaluating a treating physician's opinion" and failure to "*explicitly consider*" any of the named factors is grounds for rejecting the ALJ's decision.  Greek, 802 F.3d 370, 376 (2d Cir. 2015) (emphasis added).  However, an ALJ is not required to explicitly cite to the treating physician rule or its factors. Crowell v. Comm'r of SSA, 705 Fed. Appx. 34, 35 (2d Cir. 2017). It is sufficient that the ALJ substantively reference the rule and provide good reason for not assigning a plaintiff's treating physician controlling weight.  Id.

The Court rejects plaintiff's assertion that the ALJ was required to explicitly examine the factors set out in 20 C.F.R. § 404.1527.  As the Second Circuit articulated in Cromwell, it is sufficient that the ALJ substantively reference the factors and provide good reason for assigning the treating physician's opinion less than controlling weight.  Crowell, 705 Fed. Appx. at 35.  However, the ALJ violated the treating physician rule by failing to accord Dr. Benthien's opinion controlling weight despite determining it was consistent with the record.

When examining Dr. Benthien's opinion, the ALJ noted that the opinion was generally consistent with the record.  However, the ALJ assigned the opinion only partial weight because Dr. Benthien assessed plaintiff's ability with an impairment score, rather than a full functional impairment assessment.  (R. 23.)

The treating physician rule makes clear that a treating physician must be accorded controlling weight so long as his or her opinion is consistent with substantial evidence in the record and well supported by medically acceptable clinical and laboratory diagnostic techniques.   Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)).

The "failure to provide a 'function-by-function assessment' is not a basis for discounting a medical opinion.'" Doyle v. Berryhill, No. 5:16-cv-24, 2017 WL 2364312, at *6 (D. Vt. May 31, 2017).  "Whether a medical opinion includes a 'function-by-function' assessment is not a factor in the analysis under 20 C.F.R. § 404.1527(c). . . . The court concludes that the absence of responses to some questions in the medical source statement is not a good reason for discounting [a treating physician's] opinion." Melanie M. v. Berryhill, No. 5:18-CV-149, 2019 WL 3852699, at *10 (D. Vt. Aug. 16, 2019) (internal citations and quotation marks omitted); see also Urena v. Colvin, No. 13 CIV. 06270 LGS DC, 2015 WL 585583, at *16 (S.D.N.Y. Feb. 11, 2015)("[A] medical opinion is not limited to a functional assessment or to a medical source statement, but includes a physician's opinion as to the "nature and severity" of the claimant's symptoms, including the physician's opinion as to the claimant's diagnosis and prognosis.  Such opinions should be considered in accordance with 20 C.F.R. §§ 404.1527 and 416.927,

including the treating physician rule and the criteria for
weighing medical opinion evidence listed therein.")

On August 25, 2017, Dr. Benthien conducted an examination
of plaintiff to serve as part of the basis of his opinion.  (R.
1917.)  Dr. Benthien noted plaintiff's areas of pain and her
degrees of movement.  (R. 1917.)  Dr. Benthien further noted
that radiographs and a CT scan confirmed a well-healed, previous
calcaneus fracture but degenerative changes throughout the
subtalar joint causing restrictions in plaintiff's range of
motion.  (R. 1917.)  Finally, Dr. Benthien opined that plaintiff
would need further surgical intervention in the future although
she had reached a maximum level of improvement and "sustained a
22% permanent partial impairment to the right lower extremity or
31% permanent partial impairment to the right foot and ankle."
(R. 1917.)  The ALJ stated that Dr. Benthien's opinion was
consistent with the record but rejected the opinion due to a
failure to provide a function-by-function assessment of
plaintiff's abilities.

As illustrated by the case law above, Dr. Benthien's
failure to provide a function-by-function assessment of
plaintiff's limitations does not render it an insufficient
medical source statement.  The opinion examines the "'nature and
severity' of the claimant's symptoms, including the physician's
opinion as to the [plaintiff's] diagnosis and prognosis" and

therefore is sufficient to be treated as a medical source statement entitled to controlling weight.  Urena v. Colvin, No. 13 CIV. 06270 LGS DC, 2015 WL 585583, at *16 (S.D.N.Y. Feb. 11, 2015).

The ALJ violated the treating physician rule by failing to accord Dr. Benthien's opinion controlling weight, even though it was consistent with the record and well supported by medically acceptable clinical and laboratory diagnostic techniques.  The ALJ offered no other explanation for assigning less than controlling weight other than that Dr. Benthien evaluated plaintiff's ability with an impairment score, rather than a full functional impairment assessment.  The ALJ did not recontact Dr. Benthien for specific functional limitations as required before discounting the opinion.  See Johnson v. Barnhart, No. 02-CV-1704(NGG), 2004 WL 725309, at *3 (E.D.N.Y. Mar. 8, 2004) (remanding where the ALJ rejected treating physician's opinion for failure to explain the limitations opined without first contacting the physician for clarification).

The ALJ violated the treating physician rule by failing to accord Dr. Benthien's opinion controlling weight and by failing to provide good reason for his decision to do so.  As a result, the Court must remand.

### III. The Court Will Not Consider Plaintiff's Remaining Arguments

In light of the Court's findings above, the Court need not reach the merits of plaintiff's remaining arguments.  Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this Ruling.  On remand, the Commissioner will address the other claims of error not discussed herein.[5]

### CONCLUSION

Based on the foregoing reasons, plaintiff's motion for an order to remand the Commissioner's decision (Dkt. #14-2) is GRANTED and the Commissioner's motion to affirm that decision (Dkt. #18-1) is DENIED.

This is not a recommended ruling.  The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure.  Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. See 28 U.S.C. § 636(c)(3).

SO ORDERED this 30th day of July 2020, at Hartford, Connecticut.

---

[5] The Court offers no opinion on whether the ALJ should or will find plaintiff disabled on remand. Rather the Court finds remand is appropriate to permit the ALJ to obtain a particularized statement from plaintiff's treating physician concerning plaintiff's physical residual functional capacity.

_____/s/___ ____ _____

Robert A. Richardson
United States Magistrate Judge